JOSIAH S. DU BOIS

*v.*

HERMANN BORMANN et al., executors of Annie Malsch.

[Filed July 22d, 1903.]

An alleged contract was made under the belief of the proposers that they owned and had power to sell the subject-matter of the contract. The acceptor of the proposal received and accepted it under that belief. In actual fact the proposers had neither title to the subject-matter of the sale, nor power to sell it.—*Held*, the parties were incapable of making an agreement for sale. No decree can be made to enforce the specific performance of such an attempted agreement.

On bill, answer and proofs.

*Mr. Spencer Simpson,* for the complainant.

*Mr. G. Dore Gogswell,* for the defendant the Industrial Manufacturing Company.

*Mr. Matthew Jefferson* and *Mr. John W. Wescott,* for the defendants Hermann Bormann and Philip C. Adams, executors.

GREY, V. C. (orally).

I can dispose of this matter now. The case has been elaborately tried, and the principles which must control in the disposition of it, I think, are quite apparent. The bill is filed by Josiah S. Du Bois against Hermann Bormann and Philip C. Adams, executors of the last will of Annie Malsch, and also against the Industrial Manufacturing Company, a defendant who makes no substantial defence, and appears to be a defendant solely for the purpose of preventing the transfer of some of its own stock.

The purpose of the bill is to compel the defendants to transfer

Du Bois *v.* Bormann.

to the complainant two certificates, Nos. 1 and 30, of the capital stock of the Industrial Manufacturing Company (one certificate is for one hundred and ten shares and the other for forty shares) and also all the right and interest of Frank Malsch, deceased, in and to certain royalties for the use of patents. There is a restraint out maintaining the *status quo* until the disposition of the case by the court.

The shares of stock in question are claimed by the bill of complaint to be the subject-matter of the contract sought to be enforced in this suit. This contract is evidenced by two letters, set out in words and figures on the face of the bill. The first letter is dated April 22d, 1902, addressed "Mr. J. S. Du Bois," and tenders to Mr. Du Bois the interest, shares and royalties belonging to the Malsch estate, to be conveyed to him for $1,000 within one year.

"We, as executors, are willing to give you this option, and you can secure the shares, &c., by paying cash.

"We are very truly,
"HERMANN BORMANN,
"PHILIP C. ADAMS,
"*Executors.*"

This letter was received and replied to by another, dated April 28th, 1902, signed by the complainant, Mr. Du Bois, addressed "Messrs. Hermann Bormann and Philip C. Adams, Exrs. of the estate of Frank Malsch, deceased." This letter of Mr. Du Bois acknowledges the receipt of the above letter of April 22d, and, without suggesting any variance from the terms of the sale offered by that letter, accepts them.

Judge Wescott—Your honor reads the letters as addressed to the executors of Frank Malsch.

The Vice-Chancellor—That is correct. I have examined the original letter. It is addressed "Messrs. Hermann Bormann and Philip C. Adams, Exrs. of the estate of Frank Malsch, deceased." The copy set out on the face of the bill is a correct copy.

The defendants are stated in the bill to be executors of the last will of Annie Malsch, deceased. The bill prays that specific

performance of the agreement set forth in the two letters may be decreed against the defendants Hermann Bormann and Philip C. Adams, executors as aforesaid, directing the defendants to convey the stock and the right to the royalties to the complainant, and prays that the defendants, in the meanwhile, be enjoined from disposing of these shares of stock, &c.

The defendants Bormann and Adams answer the bill; admit they are the executors of the last will of Annie Malsch, and that part of the assets claimed by the executors as belonging to the estate of Annie Malsch were the one hundred and fifty shares of stock. They also admit the ,writing of the letters quoted above in the complainant's bill, but they deny that the effect of those letters was to make a contract, and assert that they simply gave an option to the complainant. They say no consideration was paid, and that the two letters imposed no contractual obligations upon the defendants. They also admit that the complainant tendered the money referred to in the letters as the purchase-price. Their answer then alleges that false representations were made by complainant as to the financial condition of the Industrial Manufacturing Company, whose stock was the subject-matter of the sale, and the intimation is that the option was secured by these false representations. This portion of the answer is a very meagre presentation of facts upon which to base a defence on the ground of fraud.

On this case so made, the parties have come to a hearing, and the first question is whether or not the two letters amount to a contract.

There is proof that, after the two letters were written—that is, after the proposition had been made by Messrs. Bormann and Adams to Mr. Du Bois, by their letter of April 22d, and after Mr. Du Bois, by his letter of April 28th, had accepted it—the defendants, at a somewhat later period, made an effort to rescind the option, as they claimed it to be.

The point the defendants make as to the legal effect of the two letters, is a question of law as to the construction of the two writings, which clearly show their meaning on the face of the papers. For this reason I refused to hear any parol evidence, upon this point of the case, to define the meaning of these letters.

14

It is admitted by the pleadings that they were written, sent and received. There is no ambiguity about their meaning. No parol proof as to contemporaneous dealings regarding this contract can be received, to explain their legal effect.

On this phase of the case I am of opinion that the writing of the letter of proposition, and the accepting it exactly in the terms in which it was addressed, constituted, after the acceptance, a contract.

It then remained only for the party accepting to pay or tender the purchase-money at any time within a year from April 10th, 1902, the period named for its payment. It did not lie at the choice of the defendants to rescind their contract at their mere choice by giving notice. The agreement did not impose upon the complainant an obligation to pay any money at the time of entering into the contract. By the two letters which made the contract the complainant was allowed one year to make the payment of the purchase-price. A tender of that price was made within the year. This is admitted by the defendants' answer. The contract, so far as tender of the price was concerned, thus became finally obligatory upon the defendants.

The other defence is put upon the ground that the contract and letters were obtained from the defendants by fraudulent representations. The defendants claim that the complainant misled the defendants at the time they wrote their letter of April 22d, 1902, offering to sell the stock, &c., by false statements to the effect that the financial capacity of the Industrial Manufacturing Company, whose stock was the subject-matter of the sale, was so greatly impaired that it was on the verge of insolvency. The representations shown to have been made were, to a very considerable extent, matters of opinion and judgment as to the future prospects of the company. It has been shown that the company was, in and about April, 1902, in actual fact threatened with such serious losses, and was, by pending suits, attacked in such a way, that it was in a very doubtful financial situation. The weight of the testimony goes to show that the consideration of the contract evidenced by the two letters was a general settlement of outstanding claims, which the parties had, as they thought, against each other, and which they sought to

Du Bois *v.* Bormann.

adjust by entering into the general settlement indicated by the two letters. Fraud is neither sufficiently alleged nor proved.

This disposes of the issues which were raised by the pleadings, and all that were raised by the evidence, except one. That one, however, is absolutely vital and controlling. The original contract or proposition was plainly made under a mistake—a mistake as to the legal *status* of the parties. It was also accepted under a mistake. This cause is not being tried for the correction of any mistake. The present question is limited to the claim to enforce specifically a contract. But the mistake made is irremediable, because of lack of power in the parties to correct it.

The mistake happened in this way: The contract in this case is based upon the two letters above recited. The first letter is addressed to "Mr. J. S. Du Bois." The writers, in the body, say "we as executors," but they do not say of what they were executors. They sign themselves "Hermann Bormann, Philip C. Adams, Executors." In point of fact, the proof is undisputed that they were the executors of the last will and testament of *Annie Malsch.* There is no pretence of proof that they were the executors of anything else.

The acceptance letter is addressed "Messrs. Hermann Bormann and Philip C. Adams, Executors of the estate of *Frank* Malsch, deceased," and is signed "Josiah S. Du Bois." There is nothing to show that there was any fraud or misrepresentation as to the capacity in which the defendants acted. The testimony is clear that these parties, each of them, supposed that, at the time of the writing of these letters, the defendants Bormann and Adams had authority to dispose of the property with which they dealt. But it plainly appears, on the face of the letters themselves, that the defendants Bormann and Adams were executors of the will of *Annie* Malsch. The proof is also undisputed that the stock and royalties belonged to the yet unadministered estate of *Frank* Malsch, deceased.

Mr. Du Bois addressed Messrs. Bormann and Adams, in his letter of acceptance, as "executors of the estate of Frank Malsch." In actual fact the defendants were not executors of Frank Malsch's estate, and had no estate in or control over its assets. Du Bois believed they could and did act for that estate.

Du Bois *v.* Bormann.

The result was that the minds of the parties to the supposed contract never, in fact, met in any agreement. The two letters entirely failed to make any contract at all. The ownership of these two certificates of stock, which is the substantial subject-matter in litigation, was in the unadministered estate of Frank Malsch. The certificates, on their face, show that they were issued to him. There is no endorsement or other disposition of those certificates which indicates that they were, in any manner, transferred, or held capable of transfer, from Frank Malsch or from his representatives. He died possessed of these certificates, and the ownership of them, as part of personal property of his estate.

The law is entirely clear that title to the goods and chattels of a decedent who dies intestate go, first, to the administrator, or, if the decedent dies testate, to the executor, for the payment of his debts. They remain in the custody and ownership of the administrator (although the distributees may be entitled to them ultimately), but they cannot go to the distributees (unless, possibly, through specific gift by will) until the decedent's debts are paid and distribution is made.

The property of Frank Malsch in these certificates, and in the royalties, came to Mrs. Annie Malsch when she took out letters of administration on the estate of Frank Malsch. She was, as administratrix, entitled to have and to take and dispose of those shares, but that function had to be exercised during her life. She died about six months after she had undertaken the administration, and before she had done any act which affected the title or ownership of these shares or royalties, &c., now the subject-matter of litigation. When she died the whole administration of the estate of Frank Malsch appears to have been entirely unsettled. There was an undertaking to administer it, but no performance. On her death the unadministered assets of Frank Malsch's estate should have gone to an administrator *de bonis non* of his estate, who should have been appointed to succeed Mrs. Malsch. This was not done. There is nothing to show whether Frank Malsch's estate is solvent or insolvent. There is no sufficient proof showing whether he died either with kindred or without kindred. Some testimony has been offered by the com-

plainant to show that he died without kin, and on this to predicate a claim that his widow became, under the act of May 11th, 1897 (*P. L. of 1897 p. 362*), entitled to all his estate. The proof upon that point is quite insufficient. Mr. Bormann was the only witness who testified on the point. He is not proven to have been so related to Frank Malsch that his testimony is conclusive. As given, it does not negative the probability that Frank Malsch did leave some next of kin. Mr. Bormann affirmatively proved that Frank Malsch had a brother. He says the brother disappeared many years ago. But no proof is given of the brother's death or that he left no issue. There has been no attempt to exhaust the situation as to possible next of. kin of Frank Malsch. The statute of 1897, which gives the property of a decedent, who dies without kindred, to his surviving widow, only operates when it appears that there are no next of kin, no matter how remote, of the decedent. So, also, the portion given to the widow by that statute is what remains after the payment of the decedent's debts—that is, the surplusage of his estate.

It has never yet been ascertained that there was any surplusage of Frank Malsch's estate. He may have owed debts which would take the whole of this property. Nothing, in such case, would come to the surviving wife.

There is no claim that the complainant accepted any proposition of the executors of Mrs. Malsch to sell the interest which, as Frank Malsch's widow, she might have in the surplusage of his estate. What the complainant accepted was, as he thought, a proposition from the representatives of Frank Malsch's estate to sell the stock, &c., of which he died seized.

The complainant asks that this court shall assume that Frank Malsch's estate has been settled, his debts paid and the surplusage of his estate distributed, and that in that distribution the stock here in question and the right to the royalties were given to the surviving wife, becoming part of her estate, and that her executors dealt with that stock, &c., the letters here claimed to make a contract for sale.

This is impossible. The parties themselves did not at the time they acted, so deal with each other. The complainant, as stated, mistakenly supposed he was dealing with executors of

Frank Malsch's estate. The executors of Annie Malsch's will mistakenly believed they could dispose of the stock, &c., when they had, in fact, no power to deal with it. Each acted under a fatal mistake. Nothing can be done in this suit to aid the parties.

The bill must be dismissed, and, inasmuch as the defendants, by objections in the nature of a demurrer *ore tenus,* challenged the complainant's right, it should be with costs.